IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal No. 3:19cr76

MARK WILLIAM THOMPSON, III

**MEMORANDUM OPINION**

This matter is before the Court on the defendant's *pro se* Emergency Motion For Home Confinement and Compassionate Release in light of COVID-19 (ECF No. 50) and the defendant's MOTION FOR COMPASSIONATE RELEASE AND INCORPORATED MEMORANDUM IN SUPPORT (ECF No. 55). Having considered the motions, the United States' Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 58), the Presentence Report (ECF No. 52), the position of the Probation Office (ECF No. 56), and the record herein, the defendant's *pro se* Emergency Motion For Home Confinement and Compassionate Release in light of COVID-19 (ECF No. 50) and the defendant's MOTION FOR COMPASSIONATE RELEASE AND INCORPORATED MEMORANDUM IN SUPPORT (ECF No. 55) will be denied.

**BACKGROUND**

From the middle of February 2015, continuing through the middle of July 2015, Thompson and his confederate, Dawn Aurelia Hollis, executed the scheme of bank fraud and aggravated identity

theft. Hollis was the Senior Fraud Intake Representative with Capital One Bank and communicated regularly with Capital One Bank's customers whose credit card numbers had been comprised. She received, in that capacity, from the cardholders their personal identifying information. Using that information, from cardholders, Thompson and Hollis used the stolen credit card numbers for various purposes and used the stolen personal information. The Government says that, beyond the use of the stolen credit card numbers, Thompson's involvement and offense conduct was not extensive.[1]

On February 27, 2020, Thompson entered pleas of guilty to Count Four charging bank fraud and Count Seven charging aggravated identity theft. (ECF No. 30). On June 25, 2020, Thompson was sentenced to two months on Count Four and 24 months consecutively on Count Seven, with a total of three years supervised release. The Bureau of Prisons reports that Thompson's projected release date is July 15, 2021. He is confined at FCI Hazelton, a facility that houses an inmate population of 1,645.

---

[1] In this motion (ECF No. 55), Thompson says that he submitted a request for compassionate release to the Warden of the facility where he is confined (FCI Hazelton) and did not receive a response within thirty days. The Government represents that a Bureau of Prisons' attorney related that FCI Hazelton has not received a compassionate release request. The record does not contain a copy of the asserted written request.

Thompson bases his motion on the assertion that he suffers from Lupus, an autoimmune disease which, according to the Center for Disease Control, places its sufferers at a higher risk of getting severely sick from COVID-19. Thompson also suffers from mental health disorders, specifically Schizoaffective Disorder, major depression, anxiety, and Post-Traumatic Stress Disorder. (ECF No. 52, ¶ 73). He takes the view that the medical and mental conditions from which he suffers place him within the class of people for whom the risk of contracting COVID-19 and suffering long term ill affects therefrom constitutes a compelling and extraordinary reason for sentence reduction by way of compassionate release.

### DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). <u>United States v. White</u>, 378 F. Supp.3 784, 785 (W.D. Mo. 2019).

The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot

3

independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive professional efforts to curtail the virus' spread. United States v. Raia, 954 F.3d 594, 597 (3rd Cir. 2020). In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, inter alia, the guidance of the CDC, and non-binding policy statements of the United States Sentencing Guidelines. See United States v. Beck, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019). The policy statements are not binding but are informative and may be considered. United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020). The cases teach that, to constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious. Also, it is generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).

To establish existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19, the defendant must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at [his] prison facility." United States v. White, \_\_\_\_\_ F. Supp.3d

\_\_\_\_\_, 2020 WL 1906845, at *1 (E.D. Va. April 23, 2020) (quoting United States v. Feiling, 453 F. Supp.3d 832, 840 (E.D. Va. 2020)).

### 1. Particularized Susceptibility

Thompson claims that he suffers from Lupus, but neither this record nor Thompson's Bureau of Prison's medical records contain evidence to support that claim. He does suffer from the claimed mental health diseases as to which there is evidence - albeit somewhat inconclusive - that people with mental health conditions are more susceptible to the virus.

However, the fact that a defendant has established a higher susceptibility to COVID-19 does not resolve the particularized susceptibility requirement because identified risk factor conditions must be serious to constitute extraordinary and compelling reasons. It appears from the record that the mental conditions on which Thompson bases his motion are "chronic conditions that can be managed in prison [and thus] are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020). In addition, Thompson has not established that his medical needs cannot be met while incarcerated and, indeed, the scant medical information available outlines that he receives regular medical care and is being given medications related to the mental health issues.

In sum, Thompson has not met the particularized susceptibility risk facet of the applicable test.

2. **Particularized Facility Risk**

Nor has Thompson met the particularized facility risk component of the appropriate test. His motion cites press releases and information respecting the instances of COVID-19 among inmates and staff at BOP facilities nationwide, but provides no real evidentiary support of a particularized risk of contracting the disease at FCI Hazelton, the defendant's facility of incarceration. Further, the record reflects that, at the time of the filing of the Government's papers, FCI Hazelton (population 1,645) had 22 active case of COVID-19 among inmates, 16 active cases of COVID-19 among staff, and 140 inmates and 50 staff members who had previously recovered from COVID-19. In addition, all inmates who have tested positive are being appropriately treated and isolated in accord with the appropriate CDC guidelines that have been adopted by the Bureau of Prisons.

On this record, Thompson has not met the particularized facility component of the applicable test.

3. **Assessment Under 18 U.S.C. § 3553(a)**

But, even if Thompson had met the particularized risk assessment and the particularized facility assessment (which he

6

has not), it would be appropriate to deny compassionate release in perspective of the sentencing factors prescribed by 18 U.S.C. § 3553(a). Compassionate release, of course, is appropriate only where the defendant is not a danger to the safety of any other person or of the community. The defendant argues, in conclusory fashion, that he is not a danger to the community. However, as the United States points out, Thompson, whose criminal history category is V, has a long history of violating the law (ECF No. 52, pp. 10-14). He has convictions for Larceny, Brandishing a Firearm, Receiving Stolen Goods, Eluding Police, and Unauthorized Use of a Vehicle. Nor has Thompson benefited from judicial leniency; and he committed the offenses of conviction while on a sentence of good behavior. His history presents a high risk of recidivism, thus he is a danger to the community.

To protect the public and to deter the defendant from his criminal inclination, it is necessary that he serve his entire sentence. That is the necessary conclusion of applying the provisions of 18 U.S.C. § 3553(a) to this record.[2]

---

[2] There is no evidence of post-convictions conduct to be considered.

## CONCLUSION

For the foregoing reasons, the defendant's *pro se* Emergency Motion For Home Confinement and Compassionate Release in light of COVID-19 (ECF No. 50) and the defendant's MOTION FOR COMPASSIONATE RELEASE AND INCORPORATED MEMORANDUM IN SUPPORT (ECF No. 55) will be denied.

It is so ORDERED.

/s/ *[signature]*
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: June ___, 2021